Sucrs. de Canals Hnos. & Co., S. en C., demandante y apelada, *v.* Sucn. de Galo Quiñones López, compuesta de su Vda. Carolina Polonia Howe y Vélez, de su hijo legitimado Clemente Angel Juan Quiñones Howe y de su hija natural reconocida María Quiñones Ortiz, demandados y apelantes.

No. 5846.—*Sometido:* Diciembre 1, 1932. *Resuelto:* Abril 18, 1934.

L. *Mercader,* abogado de los apelantes; *López de Tord & Zayas Pizarro,* abogados de la apelada.

El Juez Asociado Señor Aldrey, emitió la opinión del tribunal.

Esta apelación la interpusieron los demandados en este pleito contra la sentencia que los condena a pagar a la demandante cierta cantidad de dinero.

La parte actora es la sociedad mercantil de Ponce Sucrs. de Canals Hnos. & Co., S. en C., y los demandados son la viuda y dos hijos, todos mayores de edad, de Galo Quiñones López.

El 26 de noviembre de 1927, Galo Quiñones López firmó dos cartas, ·después de leerlas, y las entregó a un agente de la demandante. Esas cartas, que tienen distinta fecha, fueron firmadas el mismo día y dicen así:

"Manatí, P. R., noviembre 15, 1927.—Sres. Sucs. de Canals Hnos. & Co., Ponce, Porto Rico.—Muy Sres. míos y amigos: La presente tiene por objeto confirmarles lo que les manifesté de palabra, o sea,

que con esta fecha he abierto un establecimiento comercial dedicado a la compraventa de mercancías secas en el pueblo de Manatí, frente al cual negocio he puesto a mi hijo político don Manuel Chameli.

"Siendo mi deseo entrar en negociaciones con ustedes para la compraventa de las citadas mercancías, con destino al referido establecimiento y bajo las condiciones que acostumbran ustedes vender a sus clientes, es entendido que cualquiera negociación que lleven ustedes con mi ya citado hijo político, será igual que si la hubieran hecho conmigo, y de la cual seré yo responsable para con ustedes en cualquier fecha.

"Atento amigo y S. S.,

"Galo Quiñones.

"Manatí, P. R., Nov. 26, 1927.—Sres. Sucs. de Canals Hermanos & Co., Ponce, P. R.—Muy Sres. míos y amigos: De acuerdo con lo que verbalmente hemos convenido me hago responsable del pago de $1,013.45, cantidad que les será remesada por medio de pagos parciales hasta su total liquidación.

"Muy atentamente,

"Galo Quiñones."

Días antes de ser firmadas esas cartas el agente vendedor tuvo una conversación en Manatí con Galo Quiñones y como resultado de ella la demandante redactó dichas cartas y las entregó a su agente vendedor para que recogiera la firma de ellas, como lo hizo. Los $1,013.45 de que se hizo responsable Quiñones en una de las cartas proceden de igual cantidad que Manuel Chameli quedó a deber a la demandante cuando tenía una tienda por su cuenta. Como consecuencia de esas cartas fué abierta una tienda en Manatí a nombre de Galo Quiñones, quien pagaba las contribuciones por ella, y la mercantil de Ponce abrió en sus libros una cuenta corriente a Galo Quiñones. Muerto éste el 20 de febrero de 1929, sin que conste que la mercantil de Ponce tuviera conocimiento de ese fallecimiento, siguió Chameli haciendo compras a la demandante hasta un total de $785.70 que pagó con abonos que hizo por $890, que dejaron un remanente de $104.30. La mercantil de Ponce sólo reclama de los herederos de Galo Quiñones $2,722.45 que comprenden el saldo de la mercancía comprada por Quiñones hasta la fecha de su

muerte, los $1,013.45 mencionados e intereses al 1 por ciento mensual. La corte inferior dedujo de los $2,722.45 reclamados los intereses cargados y el remanente de $104.30 que sobró de los $890 que pagó Chameli por las compras hechas después de la muerte de Quiñones y condenó a la sucesión demandada a pagar la cantidad de $2,380.85, más las costas, sin incluir honorarios de abogado.

En el primer motivo de este recurso se alega que la corte inferior erró al concluir que Galo Quiñones redactó y remitió las cartas de 15 y 26 de noviembre de 1927.

Es cierto que él no redactó esas cartas pero existe prueba abundantísima, hasta de familiares suyos, de que las leyó y las firmó entregándolas después a un agente vendedor de la demandante, por lo que no es sostenible el error alegado.

El segundo se funda en que no debió ser admitida en el juicio la carta de 26 de noviembre de 1927 para demostrar una nueva causa de acción no constante en la demanda, quedando indefensos los demandados.

Esa carta es en la que Galo Quiñones se hizo responsable del pago de $1,013.45 y aunque no se menciona en la demanda no aduce una nueva causa de acción, porque en la cuenta que por $2,722.45 con intereses rindió la demandante estaba incluída la cantidad dicha de $1,013.45, de cuyo pago se hizo responsable Galo Quiñones. Esa partida y las correspondientes a la venta de provisiones era una sola obligación de Galo Quiñones, pues él se comprometió a pagar ambas. Además, si esa carta constituía una nueva causa de acción, los demandados pudieron solicitar una suspensión del juicio para presentar cualquier defensa adicional y no lo hicieron.

El tercer motivo de error es por haber declarado la corte sentenciadora que Galo Quiñones fué el único dueño de la tienda que Chameli administraba.

La carta de Galo Quiñones a la demandante diciéndole que ha abierto un establecimiento mercantil al frente del cual ha puesto a su hijo político Manuel Chameli, que desea entrar en negociaciones con ella para comprarle mercancía

y que él será responsable, no deja duda alguna por sus claras palabras de que dicho establecimiento comercial era suyo. Además, pagaba la contribución impuesta a esa tienda y la evidencia no demuestra lo contrario. El mismo Chameli no solamente no lo ha negado sino que así lo ha declarado, sin que, por otra parte, se haya presentado por los demandados prueba en sentido contrario, pues las manifestaciones de la viuda y de uno de los hijos respecto a que no sabían que Galo Quiñones tenía tal tienda no son suficientes para destruir las claras palabras del documento firmado por Galo Quiñones. La demandante podía descansar en el contenido de dicha carta y también tratar directamente con Chameli como representante de Quiñones, ya que en ella se le dice que cualquiera negociación que haga su hijo político será igual que si la hiciera con él, pues se hace responsable de ella. En vista de esto, el hecho de que algunos giros por pago a cuenta fueran librados por Chameli no prueba que la tienda no fuera de Quiñones.

■ El cuarto motivo de apelación descansa en que no se probó que Manuel Chameli fuera un apoderado de Galo Quiñones.

Para fundar ese error se dice que Chameli no era apoderado de Quiñones porque la tienda era de aquél, aunque a nombre del segundo, y que la causa de acción sería contra Chameli por las mercancías que tomó y no contra la sucesión demandada. No hay prueba alguna en los autos que sostenga esas conclusiones de los demandados. Por el contrario, la carta de 26 de noviembre de 1927 es prueba de que autorizó a su hijo político para tomar mercancías para dicha tienda por cuenta de Quiñones y esa autorización constituye un mandato especial aunque estas palabras no se usen en la carta, por lo que de las mercancías tomadas por Chameli para la tienda era responsable Galo Quiñones, y ahora lo es su sucesión, sin que sea de importancia en este caso si después de la muerte de Quiñones estaba o no autorizado por los herederos para continuar el negocio del padre, porque

nada se les cobra ni a nada se les condena por tales compras, que fueron pagadas. Por consiguiente, no existió error al declarar la corte inferior que Chameli era un apoderado de Quiñones en el negocio de la tienda.

■■ El quinto motivo de error atribuído a la corte sentenciadora dice así:

"Al no decretar que la conducta de Quiñones López, al suscribir las cartas de noviembre 15 y 26, 1927, equivalía a lo más a una fianza limitada en favor de la sociedad actora, que la misma era nula para hacer responsable a la sociedad conyugal con Carolina Howe, y que, de haber sido válida, fué cumplida en todo su alcance."

Empiezan los apelantes la argumentación de ese motivo de error diciendo que los detalles y circunstancias de este caso convencen de que si Galo Quiñones firmó las cartas mencionadas lo hizo con la sana intención de abrir crédito y garantizar a su yerno Chameli en sus relaciones con la demandante. No es imposible que haya sido así, pero si ése fué el propósito de Quiñones, no lo demuestran las cartas que firmó, pues de ellas no aparece que se constituyera en fiador de Chameli sino que lo que Chameli comprase a la demandante para la tienda sería como si el mismo Quiñones lo comprara y de ello se hacía responsable. En otras palabras, que las compras por Chameli serían compras hechas por Quiñones de cuyo pago él respondería. No es una fianza lo que contienen las cartas sino un apoderamiento de cuyas consecuencias se hace Quiñones expresamente responsable. La manifestación de algún testigo de que Quiñones garantizó a Chameli no puede destruir lo que en contrario surge de los documentos firmados por Quiñones.

Sentado que no se trata en este caso de una fianza sino de deuda de una persona constituída por medio de su apoderado facultado expresamente para ello, huelga resolver si Quiñones podía constituir esa fianza sin el consentimiento expreso de su esposa y si fué cumplida. Nos bastará decir que el artículo 1328 del Código Civil sólo requiere el consentimiento expreso de la mujer para que el marido done,

enajene y obligue a título oneroso bienes inmuebles de la sociedad conyugal. *The American Colonial Bank* v. *Registrador,* 28 D.P.R. 15.

El sexto motivo es por haber admitido la corte copias por exhibición para acreditar la personalidad de la demandante.

Para probar la demandante la constitución de su sociedad y sus modificaciones presentó un testimonio hecho por un notario por exhibición de varias escrituras públicas que transcribe. También presentó certificación librada por el Registrador de la Propiedad de Ponce con vista del Registro Mercantil de dicha ciudad en la que aparecen inscritas la constitución y modificaciones de la sociedad.

En cuanto a ese motivo de error se limitan los apelantes a decir que un notario sólo tiene facultad para certificar los documentos bajo su custodia; cuestión que no es necesario resolver en este caso porque se ha probado que la escritura social de la demandante y la de sus modificaciones están inscritas en el Registro Mercantil.

También dicen que la carta de noviembre 15, 1927, está dirigida a Sucs. de Canals Hnos. & Co., mientras que la demandante es Sucrs. de Canals Hnos. & Co., S. en C. Esta alegación carece de importancia porque aparte de que se probó en el juicio que en Ponce sólo existe la sociedad Sucrs. de Canals Hnos. & Co., S. en C., los demandados no pueden negar la personalidad de la demandante porque fué a ella a quien su padre compraba las mercancías y a la que se hacían abonos a cuenta de las mismas. *Houston Packing Co.* v. *Pagán López & Co.,* 20 D.P.R. 249; *Meunier Freres* v. *Amill,* 25 D.P.R. 792.

En otro error, el séptimo, se alega que no debió ser admitida la cuenta corriente presentada por la sociedad actora para justificar la deuda cuyo pago se reclama a los apelantes. Esa cuenta no sólo consta en los libros de la mercantil, llevados de acuerdo con la ley, y presentados a la corte, sino que fué justificada por las declaraciones de

José B. Alvarez y de su empleado Fernández y también por Chameli, encargado de la tienda por Quiñones y su apoderado en cuanto a ella, la que fué aceptada por él como correcta, por lo que era admisible y lo único que fué rechazado de ella por la corte fueron los intereses que habían sido cargados porque entendió que no habían sido estipulados.

En el octavo motivo se dice que fué error el concluir que la carta de noviembre 26 de 1927 autorizaba a la actora para incluir en la cuenta corriente el importe garantizado.

En la citada carta dijo Galo Quiñones a la mercantil de Ponce que él se hacía responsable de pagarle la cantidad de $1,013.45. Esto constituye el reconocimiento de una obligación suya para la mercantil demandante y por esto esa deuda por él aceptada pudo ser incluída en la cuenta corriente como deuda de Quiñones, y sus términos no demuestran ser una fianza.

Se quejan también los apelantes de que la corte sólo abonó a la cuenta $104.30 pagados por Chameli a la demandante después de la muerte de Quiñones en vez de los $890 que satisfizo.

Puesto que el mandato que Galo Quiñones confirió a Chameli terminó con la muerte de aquél, puesto que no se ha probado que los herederos de Quiñones autorizaran a la actora para continuar el negocio, y como en efecto él siguió comprando mercancías a la demandante, los abonos que con un montante de $890 él hizo tenían que ser el pago de las mercancías así compradas, por lo que la corte no cometió el error que se le atribuye.

No existe tampoco grave y manifiesto error de la corte inferior en la apreciación de la evidencia, que es el último motivo que alegan los apelantes para su recurso. Se funda principalmente en que la tienda no era de Galo Quiñones sino de Manuel Chameli. Sobre eso ya hemos dicho antes que la conclusión de la corte inferior fué correcta de acuerdo con la evidencia.

*La sentencia apelada debe ser confirmada.*